LYONS, BRANDT, COOK & HIRAMATSU
Attorneys at Law — A Law Corporation

GEORGE W. BRANDT  1181-0
*gbrandt@lbchlaw.com*
PAUL R. GRABLE   4232-0
*pgrable@lbchlaw.com*
1800 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-7030

Attorneys for Plaintiff
ZURICH AMERICAN INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>GRACE PACIFIC LLC fka GRACE PACIFIC CORPORATION,<br><br>　　　　　Defendant. | CIVIL NO. _____<br>(Declaratory Judgment)<br><br>COMPLAINT FOR DECLARATORY JUDGMENT; EXHIBITS "1" – "8"; SUMMONS |

COMPLAINT FOR DECLARATORY JUDGMENT

　　　Comes now Plaintiff ZURICH AMERICAN INSURANCE

COMPANY ("Zurich"), by and through its counsel, Lyons, Brandt, Cook &

Hiramatsu, and for its complaint against the above-named defendant alleges and avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Zurich is a New York corporation with its principal place of business in Schaumburg, Illinois.

2. Grace Pacific LLC, fka Grace Pacific Corporation ("Grace Pacific"), is a Hawaii limited liability company with its principal place of business in Honolulu, Hawaii.

3. There is complete diversity of citizenship between the parties, and the amount in controversy herein exceeds $75,000.00.

4. Zurich brings this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 asking this court to determine, as a matter of law, that Zurich has no duty to defend or indemnify Grace Pacific for the claims asserted against it in a certain underlying lawsuit currently pending in the Circuit Court of the First Circuit, as described more fully herein.

5. There is an actual and continuing controversy between Zurich and Grace Pacific.

6. All or a substantial portion of the events giving rise to this action occurred within the City and County of Honolulu and the State of Hawaii.

7. Venue lies in this court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

8. This matter stems from a $26,400,000 construction project at Hickam Air Force Base in which Dick Pacific Construction ("DPC") was the general contractor (the "Project").

9. Among other things DPC was to construct a runway at Hickam Air Force Base.

10. On or about July 26, 2007, Paradigm Construction ("Paradigm"), a DPC subcontractor ordered approximately $1,656,570.09 of aggregate base materials from Grace Pacific's quarry for inclusion in the runway.

11. The aggregate base materials ordered from Paradigm to Grace Pacific were delivered to the Project during 2007 and 2008.

12. After delivery and inclusion in the runway, the Corps of Engineers ("COE") directed the removal and reinstallation of the top six inches within the base course purchased from Grace Pacific.

13. Removal of the base course also required removal and replacement of the concrete pavement that had been installed on the top of the original base course in lane one.

14. The COE contended that after testing that the base course materials from Grace Pacific did not meet Project contract specifications.

15. The decision of the COE was later appealed to the Armed Services Board of Contract Appeals ("Board") by DPC.

16. On December 23, 2015, the Board determined that the top six-inch layer of the base course within the Strat Ramp was nonconforming and that the COE was entitled to its replacement, at DPC's expense.

17. The Board found it reasonable that the COE request DPC remove the nonconforming base course.

## THE UNDERLYING LAWSUIT

18. On April 11, 2016, Paradigm filed a Complaint in the First Circuit Court of the State of Hawaii ("Underlying Lawsuit"). A true and correct copy of the complaint in the Underlying Lawsuit is attached as Exhibit "1".

19. The Underlying Lawsuit alleges the following claims: (1) breach of contract for express and implied warranties and indemnity; (2) negligent/intentional misrepresentation; (3) negligence/gross negligence; and (4) violation of Chapter 480 of the Hawaii Revised Statutes ("HRS").

20. Paradigm has requested compensatory, special, and punitive damages; attorneys' fees and costs; prejudgment interest; and all other forms of relief as deemed necessary by the Court.

21. Paradigm alleges damages of $2,703,408.62 plus attorney fees and prejudgment interest for breach of contract, negligent/intentional misrepresentation, and negligence/gross negligence.

## THE INSURANCE POLICIES

22. Zurich issued commercial general liability insurance policies to Grace Pacific as follows:

- Policy No. GLO 4277311-01 – Commercial General Liability Form CG 00 01 (12 04) for policy period 04-01-2006 to 04-01-2007

- Policy No. GLO 4277311-01 – Commercial General Liability Form CG 00 01 (12 04) for policy period 10-01-2007 to 10-01-2008

- Policy No. GLO 4277311-01 – Commercial General Liability Form CG 00 01 (12 04) for policy period 10-01-2008 to 10-01-2009

- Policy No. GLO 4277311-04 – Commercial General Liability Form CG 00 01 (12 07) for policy period 10-01-2009 to 10-01-2010

True and correct copies of the insurance policies are attached hereto as Exhibits "2" through "5", respectively.

23. The Commercial General Liability ("CGL") policies issued by Zurich to Grace Pacific, Exhibits "2" through "5", as to all material issues in this matter, provide the same insurance provisions.

24. Each of the CGL policies has the following Insuring Agreement:

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

  (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

25. Each of the CGL policies includes the following relevant exclusions:

 **2.** **Exclusions**

  This insurance does not apply to:

  **a.** **Expected Or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b.** **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or

   **(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . . .

**j.    Damage To Property**

"Property damage" to:

. . . .

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly perform on it.

. . . .

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

. . . .

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden accidental physical injury to "your product" or "your work" after it has been put to its intended use.

    **n.**    **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **(1)**    "Your product";

    **(2)**    "Your work"; or

    **(3)**    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

26. Each of the CGL policies includes the following relevant definitions:

    SECTION V — DEFINITIONS

    13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    . . . .

    16.    "Products-completed operations hazard":

        a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1) Products that are still in your physical possession; or

  (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

 b. Does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

. . . .

21. "Your product":

  a. Means:

     (1) Any goods or products, other than real property, manufactured, sold, handled distributed or disposed of by:

       (a) You;

       (b) Others trading under your name; or

       (c) A person or organization whose business or assets you have acquired; and

     (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

     (1) Work or operations performed by you or on your behalf; and

     (2) Materials, parts or equipment furnished in connection with such work or operations.

        b.    Includes:

           (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

           (2)    The providing of or failure to provide warnings or instructions.

27.    On September 7, 2010, Grace Pacific notified Zurich of a potential claim.

28.    Thereafter, Grace Pacific participated as a non-party in proceeding with the COE and with DPC and Paradigm before the Board.

29.    On June 30, 2016, Grace Pacific, through its insurance agent King & Neel, Inc., tendered its defense in the Underlying Lawsuit to Zurich.  A true and correct copy of the email from Dick Foard, Vice President of King & Neel, Inc. to Debbie Vacher of Zurich is attached hereto as Exhibit "6".

30.    On July 11, 2017, Zurich agreed to defend Grace Pacific in the Underlying Lawsuit subject to a reservation of rights.  A true and correct copy of the reservation of rights is attached hereto as Exhibit "7".

31.    On October 17, 2018, Zurich and Grace Pacific entered a Memorandum of Understanding in which Zurich agreed to pay Grace Pacific $325,000 for reimbursement of investigation/defense costs and fees incurred by Grace Pacific before January 1, 2018.  A true and correct copy of the Memorandum of Understanding is attached hereto as Exhibit "8".

32. Zurich has continued to pay defense costs Grace Pacific incurred in the Underlying Lawsuit subject to the reservation of rights letter.

COUNT I
( Declaratory Judgment)

33. Zurich realleges and incorporates herein by reference the allegations in Paragraphs 1 —29 of this Complaint.

34. The claims asserted in the Underlying Lawsuit are not for "property damage" caused by an "occurrence" within the coverage of the CGL policies issued by Zurich.

35. Coverage for the claims in the Underlying Lawsuit is further precluded in whole or in part by one or more of the exclusions, including but not limited to: Exclusion 2.a. for expected or intended injury; Exclusion 2.b. for contractual liability; Exclusion j(5) for "property damage" to that particular part of real property on which the insured or any contractors or subcontractors working directly or indirectly on the insured's behalf are performing operations; Exclusion j(6) for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; Exclusion k for "property damage" to "your product"; Exclusion m for "property damage" to "impaired property"; and Exclusion n for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product."

36. Coverage is also precluded under the Commercial General Liability Coverage and the Endorsement entitled "EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY" for "property damage" arising out of the rendering of or failure to render any professional services.

37. Accordingly, Zurich is entitled to a declaration that it has no obligation to defend or indemnify Grace Pacific for the claims asserted in the Underlying Lawsuit.

38. Should this Court determine that Zurich has no duty to defend Grace Pacific in this Declaratory Judgment action, Zurich asks the Court to order Grace Pacific to reimburse Zurich for attorneys' fees and other costs incurred on Grace Pacific's behalf after January 1, 2018 in the Underlying Lawsuit.

WHEREFORE, Zurich prays for relief as follows:

A. For a binding declaration that Zurich has no duty to defend and/or indemnify Grace Pacific LLC for the claims asserted against it in the Underlying Lawsuit.

B. For reimbursement of attorneys' fees and costs incurred by Zurich on behalf of Grace Pacific LLC in the Underlying Lawsuit.

C.  For Zurich's attorneys' fees and costs of suit in this action and for such other relief as the Court may deem appropriate in the circumstances.

DATED: Honolulu, Hawaii, March 28, 2019.

/s/ George W. Brandt
GEORGE W. BRANDT
PAUL R. GRABLE
Attorneys for Plaintiff
ZURICH AMERICAN INSURANCE COMPANY